UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK CITY TRANSIT AUTHORITY,

    Plaintiff

v.

WESTFIELD FULTON CENTER,

    Defendant.

Civ. No. 24-cv-1123 (LGS)

**REPLY BRIEF IN FURTHER SUPPORT OF
NYCTA'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................ 1

I. A HEIGHTENED INJUNCTION STANDARD IS INAPPROPRIATE ....................................... 2

II. NYCTA WOULD BE IRREPARABLY INJURED ABSENT AN INJUNCTION ...................... 3

    A. Fulton Center Risks Losing a Vital Partner that Ensures the Daily Maintenance and Long-Term Management of this Significant Civic Space ............................................. 4

    B. NYCTA Can Neither Take Over Westfield's Obligations Nor Readily Replace Westfield With A Qualified Replacement Operator ............................................................. 5

III. THE REMAINING FACTORS FAVOR AN INJUNCTION ....................................................... 7

    A. NYCTA is Likely to Succeed on the Merits. ....................................................................... 7

    B. The Public Interest Weighs in Favor of Granting a Preliminary Injunction. ....................... 9

IV. A LIMITED INJUNCTION AND ESCROW PAYMENTS ARE INAPPROPRIATE .............. 10

CONCLUSION ............................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benihana, Inc.* v. *Benihana of Tokyo, LLC*,
  784 F.3d 887 (2d Cir. 2015) ..................................................................................... 4

*Bionpharma Inc.* v. *CoreRx, Inc.*,
  582 F. Supp. 3d 167 (S.D.N.Y. 2022) .................................................................. 2, 3

*Ciolfi* v. *Bos. Chicken, Inc.*,
  1997 WL 625450 (Mass. Super. Oct. 6, 1997) ........................................................ 8

*Citibank, N.A.* v. *Nyland (CF8) Ltd.*,
  839 F.2d 93 (2d Cir. 1988) ....................................................................................... 7

*Coastal Distrib., LLC* v. *Town of Babylon*,
  2006 WL 270252 (E.D.N.Y. Jan. 31, 2006), *aff'd as modified*, 216 F. App'x 97
  (2d Cir. 2007) ........................................................................................................... 7

*Dexter 345, Inc.* v. *Cuomo*,
  663 F.3d 59 (2d Cir. 2011) ....................................................................................... 5

*Doctor's Assocs.* v. *Stuart*,
  85 F.3d 975 (2d Cir. 1996) ..................................................................................... 10

*Eastman Kodak Co.* v. *Collins Ink Corp.*,
  821 F. Supp. 2d 582 (W.D.N.Y. 2011) .................................................................. 10

*Freeplay Music, Inc.* v. *Verance Corp.*,
  80 F. App'x 137 (2d Cir. 2003) ................................................................................ 6

*Gulf & W. Indus., Inc.* v. *Great Atl. & Pac. Tea Co.*,
  476 F.2d 687 (2d Cir. 1973) ................................................................................... 10

*Iavarone* v. *Raymond Keyes Assocs., Inc.*,
  733 F. Supp. 727 (S.D.N.Y. 1990) ........................................................................... 9

*S.E.C.* v. *Keller Indus., Inc.*,
  342 F. Supp. 654 (S.D.N.Y. 1972) ........................................................................... 2

*Mass. Mut. Life Ins. Co.* v. *Associated Dry Goods Corp.*,
  786 F. Supp. 1403 (N.D. Ind. 1992) ..................................................................... 7, 9

*N.Y. St. Motor Truck Ass'n, Inc.* v. *City of New York*,
  654 F. Supp. 1521 (S.D.N.Y. 1987), *aff'd*, 833 F.2d 430 (2d Cir. 1987) ................ 7

*National Maritime Union* v. *Commerce Tankers Corp.*,
    457 F.2d 1127 (2d Cir. 1972) ........................................................................................... 9

*Nimbus Therapeutics, LLC* v. *Celgene Corp.*,
    570 F. Supp. 3d 100 (S.D.N.Y. 2021) .............................................................................. 4

*Register.com, Inc.* v. *Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ......................................................................................... 3, 7

*Reuters Ltd.* v. *United Press Intern., Inc.*,
    903 F.2d 904 (2d Cir. 1990) ............................................................................................. 2

*Rex Med. L.P.* v. *Angiotech Pharms. (US), Inc.*,
    754 F. Supp. 2d 616 (S.D.N.Y 2010) ........................................................................... 8, 9

*Sun Chemical Corp. v. Dainippon Ink & Chemicals, Inc.*,
    635 F. Supp. 1417 (S.D.N.Y. 1986) ................................................................................. 9

*Supermarket Servs., Inc.* v. *Hartz Mountain Corp.*,
    382 F. Supp. 1248 (S.D.N.Y. 1974) ................................................................................. 5

*Tom Doherty Assocs.* v. *Saban Enter., Inc.*,
    60 F.3d 27 (2d Cir. 1995) ............................................................................................. 2, 3

*Travellers Intern. AG* v. *Trans World Airlines, Inc.*,
    684 F. Supp. 1206 (S.D.N.Y. 1988) ................................................................................. 8

*trueEX, LLC v. MarkitSERV Ltd.*,
    266 F. Supp. 3d 705 (S.D.N.Y. 2017) .............................................................................. 8

*Van Wagner Advertising Corp.* v. *S&M Enterprises*,
    492 N.E.2d. 756 (N.Y. 1986) ........................................................................................... 8

Plaintiff, the New York City Transit Authority ("NYCTA"), respectfully submits this reply memorandum of law in further support of its motion for a preliminary injunction. (ECF No. 14).

## PRELIMINARY STATEMENT

At least as early as 2022, Westfield's parent company announced its intention to "radical[ly] reduc[e] [its] financial exposure to the U.S. over the course of 2022 and 2023." This aggressive "deleveraging" plan is no doubt the real impetus for Westfield's attempt to abandon its contractual obligations at Fulton Center, a civic space that emerged when, following the September 11, 2001 terrorist attacks, the government invested billions of tax-payer dollars to resurrect Lower Manhattan, including the ravaged subway network that connected millions to the World Trade Center ("WTC"). In an effort to secure the bid to operate and manage Fulton Center, Westfield—which manages the parallel space at WTC—committed to a long-term partnership that would befit such a civic space and benefit the local community. In reneging on its contractual commitments a decade later, Westfield is blaming NYCTA for everything from purported security issues not unique to Fulton Center to separately-adjudicated construction disputes, but none of that sanctions Westfield's premature termination of the Lease or—particularly given the imminent harm to the Center and NYCTA—attempt to escape a preliminary injunction.

*First*, the heightened preliminary injunction standard Westfield is attempting to impose does not apply because the requested injunction would merely maintain the status quo for the duration of this action and would not make it difficult to render a meaningful remedy to Westfield, if it prevailed on the merits. *Second*, NYCTA has shown it would suffer irreparable harm if Westfield ceased its operations based on the loss of Westfield's specialized services, business relationships, and goodwill, as well as the harm to NYCTA's reputation and its public perception. Indeed, Westfield acknowledged and expressly agreed that monetary damages would be inadequate for the very action it attempts to take here—a premature termination of the Lease—

and that the resulting harm to NYCTA is irreparable. *Third*, the remaining factors—the likelihood of NYCTA's success on the merits and the public interest—strongly support an injunction. Westfield does little to address the likelihood of success—in fact, it does not deny its repudiation is a breach—other than disclaiming the parties' bargained-for agreement and the remedies provided by the contract. Likewise, there is no hardship from holding Westfield to its valid agreement and requiring it to perform as it has for the last 10 years, and doing so serves the public's interest by enforcing valid contracts and ensuring the continued operation of a central civic space.

**I.    A HEIGHTENED INJUNCTION STANDARD IS INAPPROPRIATE**

Instead of the preliminary injunction standard commonly applied in contractual disputes, *see*, *e.g.*, *Reuters Ltd.* v. *United Press Intern., Inc.*, 903 F.2d 904, 905, 908 (2d Cir. 1990); *Bionpharma Inc.* v. *CoreRx, Inc.*, 582 F. Supp. 3d 167, 170, 173-74 (S.D.N.Y. 2022), Westfield contends that a heighted standard requiring "a clear showing that [NYCTA] is entitled to the relief requested," *or* that "extreme or very serious damage will result from denial of preliminary relief" applies,[1] (ECF No. 35 at 7-9). Not so. Such a heightened standard applies *only* when the injunction would *alter* the status quo or "render a trial on the merits largely or partly meaningless." *Tom Doherty Assocs.* v. *Saban Enter., Inc.*, 60 F.3d 27, 34-35 (2d Cir. 1995) (applying the heightened standard where preliminary injunction "require[d] more than" what the contract provided and will "continue" to produce effects "even if [the defendant] ultimately prevails" on the merits). Neither circumstance applies here. *First*, NYCTA's proposed injunction would *maintain* the status quo. Westfield is obliged to lease Fulton Center for 20 years, and contractually waived its right to surrender Fulton Center. (*See infra* at 3.) Thus, an injunction would put the parties in "the last

---

[1]    Contrary to Westfield's claims, NYCTA expeditiously moved for a preliminary injunction 15 days after Westfield formally notified NYCTA that it intended to surrender Fulton Center. (Florio Decl. ¶ 20; ECF No. 10.) *Contra S.E.C.* v. *Keller Indus., Inc.*, 342 F. Supp. 654, 660 (S.D.N.Y. 1972) (lack of urgency when there was a 12-month delay in seeking an injunction).

2

actual, peaceable, uncontested status which preceded the pending controversy," *Bionpharma Inc.*, 582 F. Supp. 3d at 174, where Westfield continues its critical role in operating and managing Fulton Center, (Florio Decl. ¶¶ 12-14). *Second*, a trial on the merits would not be meaningless, as the relief at issue here is a time-limited injunction pending the Court's adjudication of the merits. Moreover, "there is no reason to impose a higher standard" if the injunction does not "make it difficult . . . to render a meaningful remedy to a defendant who prevails on the merits at trial," *Tom Doherty*, 60 F.3d 27 at 35, which is the case here. *See, e.g.*, *Bionpharma Inc.*, 582 F. Supp. 3d at 174 (finding that where the movant seeks to compel continued compliance with the parties' agreement, the relief is reversible).[2]

## II. NYCTA WOULD BE IRREPARABLY INJURED ABSENT AN INJUNCTION

NYCTA showed that Westfield's early and contractually violative termination of the Lease—which would deprive Fulton Center of an experienced mall operator with access to a broad network of national and international retail stores—would irreparably harm the quality of the public space, the millions of individuals the Fulton Center serves, as well as NYCTA's reputation and goodwill. (ECF No. 13 at 18-19; Florio Decl. ¶ 32-35.) Westfield contractually agreed to "waive any right to quit or surrender" Fulton Center and that its performance "shall continue unabated" "unless and until" the Lease is validly terminated. (ECF No. 6-1 at 36, § 2.2; *id.* at 89, § 15.9.) Westfield now claims that "NYCTA or a replacement operator could easily step into Westfield's shoes," (ECF No. 35 at 11), and speculates that "it will be business as usual at Fulton Transit Center," (*id.* at 15). This turns a blind eye to the "loss of reputation, good will, and business opportunities" that would result from Westfield's breach, all of which constitute irreparable harm. *See Register.com, Inc.* v. *Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).

---

[2] Even if a heightened standard did apply, NYCTA has made a "clear showing" that it is entitled to relief and that "extreme or very serious damage will result from denial of preliminary relief" for the reasons explained *infra*.

3

### A. Fulton Center Risks Losing a Vital Partner that Ensures the Daily Maintenance and Long-Term Management of this Significant Civic Space

Westfield—an experienced mall operator with access to a wide portfolio of retail stores—plays a critical role in the operations and success of the uniquely-positioned Fulton Center. (Florio Decl. ¶ 8-9, 13-14, 16, 19; ECF No. 13 at 6-7.) Even Westfield recognized that Fulton Center is "a 'hub of connectivity' . . . [that] 'create[s] a truly unique travel experience.'" (Florio Decl. ¶ 9.) Westfield also "underscored that it had a 'vested interest in the success and the passenger experience at Fulton Center' and offered efficiencies through the staff Westfield deployed for Westfield WTC." (Florio Decl. ¶ 10, Ex. A at 2, 5.) Indeed, the express terms of the Lease embrace the importance of continuity to the success of this civic space. Westfield *offered* to enter into a renewable 20-year Lease, *waived* any right to quit or surrender Fulton Center, and *expressly agreed* to the issuance of injunctive relief for nonmonetary defaults like the one at issue here. (Florio Decl. ¶ 10; ECF No. 6-1, §§ 2.2; 22.1.14.) Westfield now insists that its detailed "acknowledgement of irreparable harm" in the Lease "cannot establish irreparable harm." (ECF No. 35 at 9.) But the clause is "relevant evidence that can help support a finding of irreparable injury," particularly where, as here, the evidence shows that NYCTA will suffer irreparable harm. *Benihana, Inc.* v. *Benihana of Tokyo, LLC*, 784 F.3d 887, 896 (2d Cir. 2015).

Beyond the Lease's express language, "specific performance is a proper remedy where the subject matter of the particular contract is unique and has no established market value." *Nimbus Therapeutics, LLC* v. *Celgene Corp.*, 570 F. Supp. 3d 100, 122 (S.D.N.Y. 2021). Here, the decades-long Lease was tailored for Westfield's operations at one of the busiest transportation hubs in the country. (Florio Decl. ¶¶ 3, 11.) During the negotiations, Westfield "underscore[d] its unique qualifications, including its longstanding experience in partnering with the public sector and its unique position" at Westfield WTC. (Florio Decl. ¶ 8.) Westfield's termination would

4

thus be akin to—if not worse than—that of an anchor tenant and "could reverberate in an unquantifiable manner." (ECF No. 35 at 15 n.7 (citing *Mass. Mut. Life Ins. Co.* v. *Associated Dry Goods Corp.*, 786 F. Supp. 1403, 1411-12 (N.D. Ind. 1992).)

Westfield also claims NYCTA will suffer no reputational harm or loss of goodwill because there is no "connection" between the Center and Westfield. (ECF No. 35 at 13; 38 ¶ 5.) In reality, Fulton Center is part and parcel with Westfield WTC. The two are connected by the Dey Street Passageway, and pool resources and staff. (Florio Decl. ¶¶ 8,16.) Westfield brands Fulton Center and its various offerings as part of the Westfield WTC. (Florio Decl. ¶ 13, Ex. B.) Because Fulton Center *is* "intrinsically entwined" with the Westfield brand, losses caused by Westfield's departure cannot be compensated by monetary damages. *See, e.g.*, *Supermarket Servs., Inc.* v. *Hartz Mountain Corp.*, 382 F. Supp. 1248, 1256 (S.D.N.Y. 1974).[3]

### B. NYCTA Can Neither Take Over Westfield's Obligations Nor Readily Replace Westfield With A Qualified Replacement Operator

Westfield's claims that NYCTA or another operator "could easily step into Westfield's shoes" are wrong. (ECF No. 35 at 10-11.) *First*, the Lease itself is neither "fungibl[e]" nor "assignabl[e]:" Westfield waived any right to quit Fulton Center and "may not" assign the Lease to a third party. (*Supra* p. 4; ECF No. 6-1 at 92, § 19.1.) *Second*, even assuming NYCTA wanted to replace Westfield, it cannot do so quickly. While Westfield erroneously claims that NYCTA "admitted" itself or another operator could take over the Lease, (ECF No. 38 ¶¶ 20-21), NYCTA only indicated that it would have to bring in a third-party property management service as an

---

[3] Westfield cites *Dexter 345, Inc.* v. *Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) to contend that damages are calculable based on previous rents. (ECF No. 35 at 14.) But unlike *Dexter 345*, where the movant had operated for more than 50 years, 663 F.3d at 63, Westfield has operated Fulton Center for less than ten years, with its performance severely disrupted by the COVID-19 pandemic, (Florio Decl. ¶ 21-23). In any event, *Dexter 345* is inapposite as the Center is a "major Lower Manhattan public transportation project[]" serving "millions of customers," that relies on Westfield's brand and expertise to attract customers and subtenants. (*Id.* ¶¶ 3, 19, 32, 33.)

5

*emergency* measure if Westfield abandoned its obligations under the Lease, which itself would be a "disastrous outcome for NYCTA and the Center." (Florio Decl. ¶ 29-31). NYCTA *never* indicated that another operator could or would merely replace Westfield. (*Id*. at 31.) As a public entity, NYCTA would have to undertake a lengthy and time-consuming tender process to (potentially) find a qualified operator that has expertise as a mall-operator and a network of high quality retail stores,[4] a process that generally takes approximately two years. (*Id*. at 18.) Moreover, a mid-lease tender to replace Westfield creates significant challenges, including the loss of the pre-existing relationships between subtenants and Westfield; the competition with Westfield, which would continue to operate Westfield WTC; and the increased operational costs caused by the loss of synergies with Westfield WTC. (*Id.* at 16, 19, 35-36.)

Contrary to Westfield's assertions, (ECF No. 35 at 11),[5] NYCTA cannot operate Fulton Center alone. NYCTA provides public transportation in New York City; it is not a mall manager like Westfield and cannot develop overnight expertise in managing numerous subtenants and vendor contracts at Fulton Center. (Florio Decl. ¶ 32.) NYCTA does not have Westfield's extensive portfolio of retail chains that can be leveraged to occupy retail spaces at Fulton Center as subtenants, (*id.* at 19), and many subtenants were attracted to Fulton Center due to their prior relationship with Westfield, (*see, e.g.*, Florio Decl. Ex. A at 15-16). The resulting loss of current and future business in the event of Westfield's departure—as well as the substantial disruptions, consumer confusion, and loss of customer and subtenant confidence—would irreparable harm to

---

[4] As such, the present case bears no resemblance to *Freeplay Music, Inc.* v. *Verance Corp.*, 80 F. App'x 137, 139 (2d Cir. 2003), a dispute in which the movant conceded that it would only lose profits and "that it c[ould] contract with another company for similar if not identical services." (ECF No. 35 at 10-11.)

[5] Westfield compares its departure to that of a shoe store, discount variety store, and work-clothing and uniform store from malls. (ECF No. 35 at 12 (citing *Ctr. Dev. Venture* v. *Kinney Shoe Corp.*, 757 F. Supp. 34, 36 (E.D. Wisc. 1991), *CBL & Assocs., Inc.* v. *McCrory Corp.*, 761 F. Supp. 807 (M.D. Ga. 1991), and *8600 Assoc., Ltd.* v. *Wearguard Corp.*, 737 F. Supp. 44, 46 (E.D. Mich. 1990).) None of those cases compare to the present dispute.

NYCTA. (Florio Decl. ¶¶ 19, 35); *see e.g. Register.com*, 356 F.3d at 404 (finding irreparable harm because it "would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship . . . that would produce an indeterminate amount of business in the years to come") (quoting *Ticor Title Ins. Co.* v. *Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)); *Coastal Distrib., LLC* v. *Town of Babylon*, 2006 WL 270252, at *4 (E.D.N.Y. Jan. 31, 2006), *aff'd as modified*, 216 F. App'x 97 (2d Cir. 2007) ("Plaintiffs will lose current and potential clients, goodwill, reputation, and an indeterminate amount of business over years to come-immeasurable in dollar amount. These types of injuries constitute irreparable harm in this Circuit and the Court holds accordingly."); *Mass. Mut. Life Ins. Co.*, 786 F. Supp. at 1417 ("Even if the mall does not 'go dark' . . . plaintiff will suffer injury that is irreparable because . . . [c]ustomers will be lost; present tenants will lose sales, reducing rent in some cases, causing non-renewal or failure in others; [and] prospective tenants will shy away."); *N.Y. St. Motor Truck Ass'n, Inc.* v. *City of New York*, 654 F. Supp. 1521, 1540 (S.D.N.Y. 1987), *aff'd*, 833 F.2d 430 (2d Cir. 1987) (finding irreparable harm where there would be "severe disruption," "decreased efficiency," and "increased costs" impacting movant's operations); *Citibank, N.A.* v. *Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988).

## III. THE REMAINING FACTORS FAVOR AN INJUNCTION

### A. <u>NYCTA is Likely to Succeed on the Merits.</u>

NYCTA has demonstrated that the Lease curtails Westfield's efforts to walk away from Fulton Center and expressly provides for injunctive relief. (*See supra* p. 4; *see also* ECF No. 13 at 9-10.) Notably, Westfield does not identify *a single* Lease provision that permits it to prematurely terminate its Lease obligations early. Instead, Westfield contends that the Court's sole focus "should be on whether NYCTA could obtain specific performance," and that the balance of the hardships do not weigh in favor of NYCTA. (ECF No. 35 at 15-17.) Westfield is wrong on both fronts. The heightened standard does not apply because the requested injunction *maintains*

7

the status quo and would not render a trial on the merits meaningless. (*See supra* pp. 2-3.) And the two cases Westfield relies on entirely miss the mark. *Van Wagner Advertising Corp.* v. *S&M Enterprises*, 492 N.E.2d. 756, 760-61 (N.Y. 1986) concerned the termination of a billboard lease, and the court determined that the space must be unique *and* damages must be hard to value, which is the situation here. (*See supra* pp. 4-5.) And in *Ciofi*, the agreement "d[id] not contain the phrase 'specific performance,' or 'injunctive relief,' or any similarly express terms." *Ciolfi* v. *Bos. Chicken, Inc.*, 1997 WL 625450, at *4 (Mass. Super. Oct. 6, 1997).

At the very least, NYCTA has shown that there is a serious question on the merits and that the balance of the hardships tips in its favor. (ECF No. 13 at 15-16.) Without meaningfully addressing whether a serious question is presented, Westfield contends that NYCTA must make "a clear showing that the balance of equities favors the movant." (ECF No. 35 at 16-17.) Even so, Westfield's abrupt decision to terminate its partnership with the Center "decidedly favor[s]" NYCTA. (ECF No. 13 at 15-16.). *First*, the fact that the injunction "would require [Westfield] to assist" NYCTA, "with which it no longer wishes to deal[,]" does not create a hardship because Westfield "need only do what it has done for the past [10] years." *trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 725 (S.D.N.Y. 2017). *Second*, the fact that Westfield now wishes it did not sign the Lease is not hardship. *See Rex Med. L.P.* v. *Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 625 (S.D.N.Y 2010) ("The Agreement's unprofitability for [the respondent] does not mean that [the movant] should suffer irreparable harm to reduce [the respondent's] losses"); *Travellers Intern. AG* v. *Trans World Airlines, Inc.*, 684 F. Supp. 1206, 1217 (S.D.N.Y. 1988).

Further, Westfield's complaints about the "broken" relationship with NYCTA *are* pretextual and lack merit. Westfield's prior construction dispute with NYCTA has nothing to do with the present litigation, and is "not atypical" in a long-term real estate partnership. (Florio Dec.

¶ 24.) Though Fulton Center, like all of New York City, experiences incidents with theft and misdemeanors, (Marrero Decl. ¶ 14-15), NYCTA has sought to address security concerns, including bi-weekly meetings with Westfield, hiring additional guards, coordinating with local law enforcement, and making a good faith effort to comply with the Center's security plan, (Marrero Decl.¶¶ 7, 10-11, 19-23; Marrero Decl. Ex. A at 10-11). Moreover, Westfield ignores its own responsibility for security measures. (*Id.* at 8-9.) In reality, Westfield's revenues at the Center dropped significantly due to the COVID-19 pandemic—not security issues. (Florio Decl. ¶ 21-22; Florio Decl. Ex. C). And, much like an anchor tenant breaking a lease "as part of a company-wide reorganization," *Mass. Mut. Life Ins.*, 786 F. Supp. 1403 at 1406, Westfield is attempting to abdicate Fulton Center as part of a "massive arbitrage operation" to "radical[ly] reduc[e] [its] financial exposure to the U.S.," (Florio Decl. ¶ 23; Florio Ex. D at 3, 8).[6]

### B. The Public Interest Weighs in Favor of Granting a Preliminary Injunction.

NYCTA has demonstrated that it disserves the public interest for Westfield to abandon Fulton Center, (ECF No. 13 at 15-17), and its obligation to "provid[e] an exceptional, world class customer experience," (Florio Decl. ¶ 7; Ex. A at 3). Westfield's arguments in response have no merit. (ECF No. 35 at 17.) *First*, Westfield, a sophisticated party, voluntary entered the Lease for 20 years and agreed to not surrender Fulton Center before the end of the Lease. Public policy favors the enforcement of valid contracts.[7] *Rex Med. L.P.*, 754 F. Supp. 2d at 626 ("The public

---

[6] The remaining cases Westfield cites are inapposite. (ECF No. 35 at 17.) In *National Maritime Union* v. *Commerce Tankers Corp.*, 457 F.2d 1127, 1138-1139 (2d Cir. 1972), the Court vacated the injunction because it would be wasteful to allow the vessel to remain idle pending determination of the case. Here, commerce would be stymied, rather than enabled, absent an injunction. In *Iavarone* v. *Raymond Keyes Assocs., Inc.*, 733 F. Supp. 727, 732 (S.D.N.Y. 1990), the court did not even discuss the balance of the hardships as irreparable harm was not shown. And in *Sun Chemical Corp. v. Dainippon Ink & Chemicals, Inc.*, 635 F. Supp. 1417, 1421 (S.D.N.Y. 1986), the court found that the respondent supported its assertion that "dire consequences" could be avoided with expert opinion and the advice of counsel, none of which is present here. Besides, Westfield's argument fails on first principles; a relationship breakdown between parties is generally present when an injunction is sought.

[7] Westfield is wrong to suggest that the policy favoring the enforcement of contracts applies only in arbitration cases because of the federal policy favoring arbitration. (ECF No. 35 at 18-19; *see supra* p. 2.)

has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense." ); (*see also* ECF No. 13 at 16-17). *Second*, Fulton Center provides Lower Manhattan benefits that go well beyond the public interest in enforcing contracts. As Westfield lauds, the Center has "transform[ed] #LowerManhattan into a public gallery celebrating the city's tenacity." (Florio Decl. Ex. B at 11); *see Gulf & W. Indus., Inc.* v. *Great Atl. & Pac. Tea Co.*, 476 F.2d 687, 699 (2d Cir. 1973).

## IV. A LIMITED INJUNCTION AND ESCROW PAYMENTS ARE INAPPROPRIATE

Westfield's requests that the Court further time-limit the preliminary injunction and "allow Westfield to escrow all payments owed to NYCTA" are inappropriate. (ECF No. 35 at 19-20.) NYCTA's proposed injunction merely "require[s] [Westfield] to continue to perform under the contract, as it has been doing for years. That hardly constitutes a cognizable 'harm' to [Westfield]." *Eastman Kodak Co.* v. *Collins Ink Corp.*, 821 F. Supp. 2d 582, 590 (W.D.N.Y. 2011). Moreover, Westfield—which bears the burden of establishing the appropriateness of the proposed bond—has provided no evidence of how it would be harmed by complying with its contractual obligations. *See Doctor's Assocs.* v. *Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). To the contrary, NYCTA *would* be harmed by the withholding of payments to which it is contractually entitled. Nor is there a need for a time-limitation as the injunction is limited until final resolution of the merits and NYCTA is prepared to move expeditiously.

## CONCLUSION

The Court should issue a preliminary injunction, and reject Westfield's requests for a time-limited preliminary injunction or escrow payments.

10

Dated: April 10, 2024              Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Gregory F. Laufer*
Gregory F. Laufer
Cesar Riviere
1285 Avenue of the Americas
New York, New York 10019-6064
glaufer@paulweiss.com
criviere@paulweiss.com


Lina Dagnew
2001 K street, NW
Washington D.C., 20011
ldagnew@paulweiss.com

# CERTIFICATE OF SERVICE

I, Gregory Laufer, certify that on April 10, 2024, a true and correct copy of the foregoing Reply Brief in support of Plaintiff's Motion for a Preliminary Injunction was served on all counsel of record via CM/ECF System of the Southern District of New York.

Dated: New York, NY
April 10, 2024

　　　　　　　　　　　　　　　　　　　　　　 /s/ *Gregory F. Laufer*
　　　　　　　　　　　　　　　　　　　　　　Gregory F. Laufer